IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOHNNY H.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:21-CV-00186-BU |
| | § | |
| KILOLO KIJAKAZI | § | |
| Acting Commissioner of Social Security | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Johnny H. seeks judicial review of a final adverse decision of the Commissioner of Social Security (the Commissioner) under 42 U.S.C. § 405(g). Dkt. No. 1. Senior United States District Judge Sam R. Cummings transferred this case to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Dkt. No. 7. Because the parties have not consented to proceed before a magistrate judge, the undersigned submits these Findings, Conclusions, and Recommendation.

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

1

## I.     BACKGROUND

Plaintiff alleges a disability that began on August 10, 2018, and originated because of a history of strokes, which caused an array of issues, including difficulty walking, writing, and remembering information. *See* Administrative Record, Dkt. No. 16-1 (Tr.) at 65. After his application for disability insurance benefits under Title II of the Social Security Act was denied initially and on reconsideration, Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge (ALJ). Tr. at 20. The ALJ held an initial hearing on April 15, 2020, where it was decided that Plaintiff would be given additional time to obtain representation. Tr. at 37–48. A subsequent hearing was held on January 14, 2021, where Plaintiff appeared unrepresented. Tr. at 50.

Plaintiff was 45 years old at the time of his hearing. Tr. at 52. He has a 10th grade education and a GED. Tr. at 52. Prior to the onset of his alleged disability, Plaintiff worked as an electronics assembler and forklift operator. Tr. at 29.

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. Tr. at 30. At step one of the ALJ's analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his onset date of August 10, 2018. Tr. at 23. At step two, the ALJ found that Plaintiff suffered from the following impairments: "Status post left brain basal ganglia infraction, decreased vision in the left eye and localized visual field defect in the right eye, uncontrolled hypertension, CAD, anxiety, and depression." Tr. at 23. The ALJ determined that Plaintiff's dry eye did not meet the requirements of a severe impairment. Tr. at 23. At step three, the ALJ found that none of the Plaintiff's impairments or combination of impairments meet the severity requirements

listed in the Social Security regulations. Tr. at 23. Additionally, the ALJ determined that

Plaintiff had the residual functional capacity (RFC) to perform light work except:

> claimant can sit 6 hours of an 8-hour day and stand/walk 4 hours of an 8-hour day. He cannot climb ladders, ropes and scaffolds and cannot work around unprotected heights or workplace hazards. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He is limited to frequent handling and fingering with the right upper extremity. He can perform occasional reading and tolerate occasional walking on uneven terrain. He can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate on them for extended periods, and respond appropriately to changes in a routine work setting. He cannot work in an environment requiring fast-paced production, quota-driven, or assembly line work. Work must be goal-oriented, without pace, so long as completed by end of shift. He can interact occasionally with supervisors, coworkers, and the general public.

Tr. at 25.

At step four, the ALJ concluded that the Plaintiff could not perform any past relevant

work. Tr. at 29. At step five, the ALJ reviewed the testimony of the vocational expert (VE)

and gave consideration to the Plaintiff's age, work experience, education level, and RFC

in concluding that other work exists in the national economy that the Plaintiff could

perform. Tr. at 30. As a result, the ALJ ultimately determined that, per the definition in the

Social Security Act, Plaintiff was not disabled.

Plaintiff appealed the ALJ's findings to the Appeals Council, but the Council upheld

the ALJ's decision. Tr. at 1–3. Plaintiff subsequently filed this action in federal district

court.

## II.     LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to

determining whether that decision is supported by substantial evidence and whether the

proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that she is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the

ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012)—that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

## III.    DISCUSSION

The Court construes Plaintiff's arguments as challenging the ALJ's decision on four grounds: (1) the ALJ failed to account for the opinions of consultative psychologists, Dr. Fox and Dr. Pitcher; (2) the ALJ failed to develop the record; (3) there is a lack of substantial evidence to support the ALJ's step 5 findings; and (4) the ALJ erred by adopting jobs that conflicted with his own RFC finding. Dkt. Nos. 20; 22. The undersigned takes each issue in turn.

A.    <u>The ALJ properly accounted for the opinions of consultative psychologists, Dr. Fox and Dr. Pitcher.</u>

Plaintiff argues that the ALJ failed to properly consider the opinions of consultative psychologists Dr. Fox and Dr. Pitcher when determining the severity of Plaintiff's disability. *Id.* at 10–11. The doctors determined that "the claimant cannot manage benefits in his own interest," "he cannot sustain concentration and persist in work-related activity," and "[h]e is not considered to be able to maintain effective social interaction on a consistent and independent basis." Tr. at 28. The ALJ ultimately found these opinions unpersuasive and "not supported by the medical evidence or consistent with the record in its entirety, specifically with the claimant's own testimony regarding activities of daily living and his

lack of treatment seeking behavior." Tr. at 28. Plaintiff claims that the ALJ "disregarding" these opinions was error because the psychologists used "examinations and testing before rendering their opinions" and because "the examiners reached similar findings despite not having reviewed each other's reports." Dkt. No. 20 at 10–11.

The Commissioner argues that the ALJ did not disregard the opinions but rather "discussed both opinions at length, the findings they relied on, and found them both not persuasive." Dkt. No. 21 at 4. The Commissioner states that the ALJ, as required by law, "considered the two required factors of consistency and supportability" in rejecting the doctors' opinions. *Id.* at 5. The Commissioner points to statements in the record made by the Plaintiff about his daily life and to medical expert Dr. Amusa's testimony that Plaintiff could perform detailed and "non-complex" tasks to show that the ALJ's decision to reject the doctors' opinions was supported. *Id.* at 5–6. Additionally, the Commissioner claims that the ALJ properly pointed out that the doctors opined on "non-psychiatric limitations" caused by the stroke, going beyond the doctors' expertise of mental functioning and further undermining their opinions. *Id.* at 6.

The Plaintiff replies by reasserting that "[w]hile the ALJ may have identified some of the positive findings in the psychologist CE reports," the judge ultimately dismisses the reports without "any detailed analysis." Dkt. No. 22 at 1. Plaintiff then points again to the consistency in the doctors' reports—as between the doctors not the record as a whole— and claims that because "a stroke event is intrinsically linked to an individual's mental functioning, it would be unusual" for the doctors not to have given an opinion on it. *Id.* at 2.

An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Garcia v. Berryhill*, 880 F.3d 700 706, n.7 (5th Cir. 2018) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, an ALJ must consider a number of factors and provide an explanation for rejecting a medical opinion. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("For claims filed after March 27, 2017, an ALJ…considers a list of factors in determining what weight, if any, to give a medical opinion."). The most important factors for the ALJ to consider are whether an opinion "is based on 'objective medical evidence and supporting explanations,'" and is consistent with "other medical and nonmedical sources" in the record. *Id.* When rejecting a medical source's opinion, an ALJ's explanation should show consideration of these two factors. *See id.* Some of the other factors that an ALJ may consider are the medical provider's relationship with the claimant, the length and frequency of the treatment provided, and the specialization of the medical source. 20 C.F.R. § 404. 1520c.

Here, the ALJ's opinion provided a few explanations for why he chose to reject the doctors' opinions. First, the ALJ states that the doctors "opined regarding non-psychiatric limitations such as motor coordination and the effect of physical limitations, neither of which is within their treatment specialties." Tr. at 28. While the Plaintiff states that because "a stroke event is intrinsically linked to an individual's mental functioning, it would be unusual for these physicians to not comment on non-mental issues," a medical provider's specialization may be considered in determining the weight to give their opinion. 20 C.F.R. § 404.1520. The ALJ was permitted to find that the doctors' comments on Plaintiff's physical condition weighed against their persuasiveness.

With regard to the two most important factors, consistency and supportability, the ALJ found that the doctors' opinions on the Plaintiff's ability to concentration, manage benefits in his own interest, and interact socially were not "*supported* by the medical evidence or *consistent* with the record in its entirety, specifically [the plaintiff's] own testimony…and his lack of treatment seeking behavior." Tr. at 28. (emphasis added). The ALJ noted that "[t]he psychological consultative examinations by Dr. Fox and Dr. Pitcher…revealed normal mental status examinations." Tr. at 27.

And even though the ALJ does not provide many examples in his opinion, he states that the doctors' findings are inconsistent with "the claimant's own testimony regarding activities of daily living." Tr. at 28. The Plaintiff told the ALJ at his hearing when asked about his anxiety and depression that "[a]ll of it pretty much went away" due to "a lot of praying and a lot of reading the bible." Tr. 78–79. When asked about his poor memory, Plaintiff admitted that "[i]t's gotten a little better." Tr. at 66. Additionally, the ALJ notes in his opinion that "claimant testified…he can…prepare food and take care of himself." Tr. at 25.

Also of importance is the fact that testimony from Dr. Amusa regarding Plaintiff's ability to concentrate on tasks conflicted with the doctors' findings—she only found Plaintiff to have "minimal limitations" when it came to focus. Tr. at 73. This shows the inconsistency between Dr. Fox's and Dr. Pitcher's opinions and other evidence in the record.

In rejecting Dr. Fox's and Dr. Pitcher's opinions, the ALJ's only duty was to provide an explanation demonstrating that consideration was given to the support and consistency

of the doctors' opinions. The ALJ's explanation for finding the doctors' opinions unpersuasive specifically references support and consistency and shows that the ALJ gave additional consideration to the doctors' specialization. Thus, the ALJ properly weighed the opinions of Dr. Fox and Dr. Pitcher and did not err in finding their opinions unpersuasive.

B.  <u>The ALJ properly developed the record in this case.</u>

In Plaintiff's initial brief he argues, in a footnote, that the ALJ in this case failed to develop the record. Dkt. No. 20 at 14. Plaintiff states that the ALJ "failed in his duty to develop the record with respect to obtaining updated medical evidence from [Plaintiff's] treating source." *Id.* Plaintiff goes on to say that the hearing testimony, specifically the portion discussing Plaintiff's knee issues, establishes that Plaintiff was struggling to obtain medical evidence because of his lack of representation. *Id.* Plaintiff further argues that the ME in this case "testified that only limited testimony could be offered as the records were outdated by 2 years." *Id.*

The Commissioner's response to this issue is also limited to a footnote. The Commissioner argues that there was at least one record, Exhibit 11F, that was "added after the hearing." Dkt. No. 21 at 6. Additionally, Commissioner points out that "[p]laintiff's counsel does not attach any additional records" that the ALJ should have used "indicating there were no other relevant records." *Id.*

In reply, Plaintiff expands on his argument that the ALJ should have helped the Plaintiff develop the record to show that he was receiving treatment. Dkt. No. 22 at 3–5. To emphasis why this was important, Plaintiff points out that the ALJ states in his decision that "[t]he claimant's lack of treatment seeking behavior, such [as] obtaining any kind of

indigent or sliding scale health care, or evidence of attempts to obtain a gold card, are not consistent with his allegations of disability." Tr. at 29.

In support of their argument that Plaintiff was receiving treatment, Plaintiff claims that during the hearing "[he] explained to the ALJ that there were additional records." Dkt. No. 22 at 6. And Plaintiff "specified that he was scheduled to have heart surgery for stent placement the following day." *Id.* Plaintiff admits that "[t]he ALJ instructed [him] on how to obtain those records and fax them to the hearing office." *Id.* However, Plaintiff attributes his failure to send over the records regarding the stent placement to his inability to write quickly and well, which Plaintiff informed the Judge of at his hearing. Plaintiff also states that while writing down the fax number he "showed significant signs of confusion, anger, and difficulty functioning." *Id.*

Also in support of their argument that Plaintiff was receiving treatment, Plaintiff cites to evidence in the record showing that the Plaintiff was receiving medication and had visits with a practitioner. *Id.* at 5.

The duty to develop the record generally arises when the record contains ambiguous evidence or "is inadequate to allow for proper evaluation of the evidence." *Williams v. Colvin*, No. 4:14-CV-988-O-BL, 2016 WL 4059235, at *3 (N.D. Tex. July 6, 2016) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). When a plaintiff is unrepresented by counsel, the duty to develop a full record is heightened. *Sun v. Colvin*, 793 F.3d 509, 509 (5th Cir. 2012). An ALJ satisfies even the heightened duty by questioning the plaintiff about their condition and limitations, considering relevant medical reports, and offering the plaintiff an opportunity to add other relevant evidence to the

record. *Brock*, 84 F.3d at 728. And as stated above, the Plaintiff must also show that development of the record would have changed the result. *Id.* at 728–29.

Here, Plaintiff supports their argument that the ALJ should have developed the record further by referring to comments made by the ME who testified at the hearing, arguing that more records should have been gathered about Plaintiff's heart operation and knee issues, and by pointing to existing records that show the treatment Plaintiff was receiving. Dkt. Nos. 20 at 14; 22 at 3–5. Turning first to the ME's testimony in this case, the ME did not state that the records were inadequate to determine whether the Plaintiff was disabled, nor did she say that the records were insufficient to allow her to provide testimony regarding the Plaintiff's condition. Tr. at 75. The ME references the records only to say that, based on the treating records, it was difficult for her to determine if Plaintiff's anxiety was a result of his stroke; she was only pointing out that because she is not an expert in issues like anxiety, she is limited to the treating record.[2] Tr. at 75.

This statement does not impose a duty onto the ALJ to further develop the medical records. The ME was able to provide testimony based on the existing record, and this testimony helped the ALJ make his final determination in the case.

---

[2] The ME's testimony in its entirety consisted of this statement:

> Yeah, so and certainly the, the outcome, the strokes are quite variable between patient to patient and I do see that. This patient has a mental impairment that is very likely to have been there prior to his stroke, not, not necessarily related to the stroke, but it's an anxiety. So, I'm not sure that answers your question, Judge, but the, the on the physical side I have somewhat limited by the treating records. So, you know, we have that, the treating records from the acute hospitalization and the rest of the records are all consultative with him. So, it's, it's a little difficult to answer that question for you, just because of the, the limitations and what I have available for me in the exhibit file.

Tr. at 75.

Plaintiff's argument that additional medical evidence about his knee and heart issues, and further consideration of the medical records showing that he was receiving medication, also fails. Dkt. No. 20 at 14; Dkt. No. 22 at 3–5. For starters, there is no indication that the record was not adequate for the ALJ to determine whether the Plaintiff was disabled. *See Williams*, No. 4:14-CV-988-O-BL at *3. Even assuming that the ALJ was required to develop the record about Plaintiff's current treatment, Plaintiff does not produce any additional evidence or make any arguments that this would have changed the outcome in this case. *Id.* In fact, an examination of the ALJ's decision points to the contrary.

The ALJ's determination that the Plaintiff was not disabled did not rest solely on his statement that "[t]he claimant's lack of treatment seeking behavior…are not consistent with his allegations of disability." Tr. at 29. The ALJ also states that "[p]laintiff has the above residual functional capacity assessment" because of "the record in its *entirety*, including the claimant's physical and psychological examinations." Tr. at 29 (emphasis added).

While the ALJ references the Plaintiff's lack of treatment, it appears this reference is based on Plaintiff's failure to attend follow up appointments—as opposed to the ALJ stating that the Plaintiff had been failing to seek treatment all together. Tr. at 27–29. There is no support for the assertion that obtaining additional evidence about Plaintiff's stent placement procedure or knee issues would have resulted in a different outcome. Plaintiff fails to provide additional records that the ALJ should have considered aside from the disability report that was already included in the record. And the ALJ references this

disability report in the list of materials he considered in finding that the "the record in its entirety" supports the RFC determination. Tr. at 4, 29.

Therefore, the ALJ did not fail to develop the record in this case.

C.  <u>There was substantial evidence to support the ALJ's step five findings.</u>

The Plaintiff argues that substantial evidence does not support the RFC. Dkt. No. 20 at 12. However, Plaintiff's actual argument, based on the substance of Plaintiff's briefing and the Commissioner's understanding of it, appears to be that the jobs adopted by the ALJ are not supported by substantial evidence. Plaintiff claims "the ALJ's written decision at Step 5 offers inconsistent information when compared with the oral hearing testimony." *Id.* at 12.

During the hearing, the ALJ asked the VE two hypotheticals to determine if there were jobs in the national economy that a person with the Plaintiff's limitations could perform.  Tr. at 93–98. In relevant part, Hypo #1 involved an individual who can "understand, remember, and carry out details, but not complex instructions…" Tr. at 92. The VE stated that an individual with these limitations, and others provided by the ALJ in the hypo[3], could work as an optical goods worker, surveillance system monitor, and bench hand. Tr. at 95–96.

---

[3] Other limitations included in the hypo were:
        limited to a reduced light level of exertion…can only stand or walk four of eight…right upper hand is limited to only handling and fingering frequently…reading is limited to just occasional…occasional exposure to uneven terrain…cannot work for fast-paced production, order driven, or assembly line work…limited to just occasional contact with supervisors, coworkers, and the general public.

In hypo #2, again in relevant part, the ALJ described an individual who would only be able to carry out simple instructions. Tr. at 96–97. In response to the second hypo, the VE said that the hypothetical person could be a telephone quotation clerk, surveillance system monitor, and charge account clerk. Tr. at 97. The ALJ ultimately adopted an RFC for the Plaintiff that matched the individual described in hypo #1, as someone who "can understand, remember, and carry out detailed but not complex instructions..." Tr. at 25. However, the ALJ adopted the jobs that the VE listed when discussing hypo 2. Tr. at 30.

Plaintiff appears to argue that because the ALJ found that the Plaintiff had an RFC that matched the language used in the hypo #1 but ultimately adopted the jobs set forth in hypo #2, which required a lower reasoning level, "the ALJ's decision is objectionable and ambiguous." Tr. at 14. Plaintiff further states that the "decision is simply internally inconsistent and therefore is not supported by substantial evidence." Dkt. No. at 14.

Commissioner responds by stating that:

> [T]he ALJ appeared to have made a scrivener's error by referring to the three jobs identified in the second hypothetical…however, because the VE testified that with either hypothetical question the person could perform the job of surveillance system monitor, and such position involves 130,000 jobs nationally, substantial evidence supports the ALJ's step five finding.

Dkt. No. 21 at 9. The Plaintiff does not respond to this portion of Commissioner's argument in his reply brief. Dkt. No. 22 at 6–8.

Not every error made by an ALJ mandates remand. "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmless error exists when it is inconceivable that a different administrative conclusion would have been

reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006)
(citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

To the extent that Plaintiff complains that the ALJ adopted an RFC with the ability
to perform detailed but not complex tasks, but then adopted jobs that would require only
simple instructions, the error is harmless. If the VE found a person limited to simple
instructions capable of performing the jobs listed in hypo #2, then a person limited to
detailed but not complex instructions should also be capable of performing the jobs listed
in hypo #2. Thus, the outcome in this case would have remained the same even with
evidence that only showed the Plaintiff capable of simple instructions.

Furthermore, even if the Court assumes that substantial evidence did not support the
jobs of phone quote clerk or charge account clerk, the VE lists the job of surveillance
system monitor in both hypos. Tr. at 95, 97. As the Commissioner points out, the job of
surveillance systems monitor alone supports a finding that substantial work exists in the
national economy for Plaintiff to perform. Dkt. No. 21 at 9 (the VE stated that "according
to the U.S. Department of Labor, there are just over 130,000 [surveillance system monitor]
jobs throughout the national economy."); *See* 20 C.F.R. § 404.1566(b).

Therefore, the ALJ's step 5 determination that the Plaintiff can perform the jobs that
the ALJ adopted is supported by substantial evidence.

D. <u>The ALJ did not adopt jobs that conflicted with its RFC findings.</u>

Finally, Plaintiff argues that "[t]he ALJ's Step 5 jobs are inconsistent with his own
RFC." Dkt. 20 at 14. The essence of this argument is that the reasoning level required for
the jobs the ALJ found the Plaintiff capable of performing exceeds the level of reasoning

16

the Plaintiff is capable of based on his RFC limitations. *Id.* at 14–16. Plaintiff states that the ALJ's RFC description "mirrors that of a Level 2 job", and yet the ALJ adopted jobs that would require level 3 reasoning. *Id.* at 16.

The DOT provides 6 potential reasoning levels that it associates with various jobs. *Appendix C: Components of the Definition Trailer*, DICTIONARY OF OCCUPATIONAL TITLES (Revised Oct. 14, 2022), https://occupationalinfo.org/appendxc_1.html [hereinafter DOT]. According to the DOT, level 2 reasoning requires a person to "carry out detailed but uninvolved written or oral instructions… [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* The Plaintiff believes this mirrors the reasoning level attributed to Plaintiff in their RFC which finds him able to "understand, remember, and carry out detailed but not complex instructions." Tr. at 25. Alternatively, jobs with level 3 reasoning require a person to "apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form...[and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, *supra*.

The Commissioner responds by arguing that "there is no conflict between [a RL 3] rating and the ability to perform 'detailed but not complex' work as the ALJ found.'" Dkt. No. 21 at 10. The Commissioner goes on to cite cases within the Fifth Circuit that have found no conflict between an applicant who can perform only simple instructions and a job requiring a level 2 or 3 reasoning. *Id.*

Plaintiff replies by reasserting his initial argument that the "ALJ failed to resolve a direct conflict between the *Dictionary of Occupational Titles* job definitions for the Step 5

jobs and the RFC in violation of SSR 00-4p." Dkt. No. 22 at 6. Plaintiff also argues that

the jobs adopted by the ALJ conflict with the RFC because they would require frequent

talking or near acuity (likelihood for reading). *Id.* at 7. According to Plaintiff, frequent

talking and acuity conflicts with the Plaintiff's RFC because the ALJ stated that Plaintiff

"can perform occasional reading" and "can interact occasionally with supervisors,

coworkers, and the general public." *See id*; Tr. at 25. Plaintiff tries to support this argument

with footnotes to descriptions in SSR 83-12—although upon further review it is clear

Plaintiff meant SSR 83-10—that define the terms occasionally versus frequent in the

context of exertion used. Dkt. No. 22 at 7.[4] The SSR 83-10 does not mention the jobs the

ALJ adopted in this case, nor does it discuss how often these jobs requiring talking or

acuity.

The ALJ has a duty to resolve direct and obvious conflicts between the VE's

testimony and the DOT, but for implied and indirect conflicts, the ALJ is permitted to rely

on the VE's expertise when the "record reflects an adequate basis for doing so." *Carey v.*

*Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). A number of Texas courts have held that even

when a person is limited to simple instructions, they may still be capable of performing

level 3 jobs, and therefore no conflict exists between their RFC and the DOT. *Coleman v.*

*Colvin*, No. 3:12-cv-1145-BN, 2013 WL 5353416, (N.D. Tex. Sept. 25, 2013) (noting that

"the weight of the authority supports a determination that…[a person] could perform work

with a reasoning level of three" even when limited to simple tasks); *Wilson v. Saul*, No.

---

[4] *See also SSR 83-10: Titles II and XVI: Determining Capability to do Other Work—The Medical-Vocational Rules of Appendix 2*, SOC. SEC. ADMIN., https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html (last visited Oct. 19, 2022).

4:20-cv-00319-O-BP, 2021 WL 972551, at *5 (N.D. Tex. Mar. 16, 2021) ("courts have found that the DOT does not 'on its face, indicate that jobs with a reasoning development level of three involve more than simple repetitive work.'") (internal quotations omitted).

Here, the Plaintiff's limitations are arguably less restrictive than only performing simple tasks—he is limited to "detailed but not complex tasks." Tr. at 25. In *McMillian v. Colan*, the Plaintiff had an identical limitation, and the ALJ adopted jobs requiring level 3 reasoning. No. 4:12-CV-661-A, 2014 WL 61172, at *5 (N.D. Tex. Jan 6, 2014). In concluding that there was no conflict between the jobs the ALJ adopted and the applicant's RFC, the court stated that a reasoning level of 3 "actually encompass[es], rather than exclude[s], the definition of a detailed task," which the plaintiff had been found capable of performing. *Id.*

Similar to the case of *McMillan*, the Plaintiff's limitations allow him to perform detailed tasks and concentrate on them for extended periods. Tr. at 25. This limitation would allow for jobs requiring him to "deal with problems involving several concrete variables in or from standardized situations." DOT, *supra*. As noted above, even in cases where the claimant was limited to simple tasks, courts have found the person capable of performing level 3 jobs. Consequently, there is no conflict between the jobs the ALJ adopted as set out in the DOT and the Plaintiff's RFC.[5]

Plaintiff's additional argument that the amount of talking and the acuity required for the jobs adopted conflicts with Plaintiff's RFC limitations also fails. It is unclear how the

---

[5] The Court notes that the ALJ sought reassurance on whether the jobs given in response to the hypos that described the Plaintiff's limitations, were consistent with the jobs' descriptions in the DOT. Tr. at 97–98. Thus, even if an indirect conflict had existed, the ALJ likely satisfied their duty to resolve the conflict.

Plaintiff concludes that these jobs require frequent talking and acuity, and Plaintiff's citation to SSR 83-12 or even SSR 83-10 does not support these assertions. Dkt. No. 22 at 7.

Even if a plain reading of the DOT's description for the listed jobs would lead to the conclusion that the jobs adopted in step five require frequent reading and acuity, "[t]he categorical DOT job descriptions are neither comprehensive nor exclusively probative of a claimant's ability to perform a particular job." *Carey*, 230 F.3d 131 at 144. "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation." *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986). Therefore, the ALJ was permitted to rely on the VE's testimony, and the Plaintiff's subjective reading of the DOT's job descriptions does support a conflict between the DOT and the jobs adopted in step 5.

For the reasons stated, the Plaintiff's RFC does not conflict with the listed jobs' description in the DOT.

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the decision of the ALJ be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to Senior United States District Judge Sam R. Cummings in accordance with normal procedures.

## V.   RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VI.  TRANSFER OF CASE

The undersigned finds that the purpose for which this case was transferred to the magistrate judge docket has been served and it is ORDERED that this case is transferred back to the docket of Senior United States District Judge Sam R. Cummings and be designated as Civil Action No. 1:21-CV-00186-C.

ORDERED this 20th day of October, 2022.


_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE